**E-FILED**
Friday, 30 October, 2015  03:36:48 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| SANDRA BROWN, LATRASHA JOHNSON, JERRI LINDSEY, and LAVI CONNER, on behalf of themselves and a class of others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE, LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; SGT. BRAINARD; and Unknown Illinois Department of Corrections Employees, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

JURY TRIAL DEMANDED

## **COMPLAINT**

Named Plaintiffs SANDRA BROWN, LATRASHA JOHNSON, JERRI LINDSEY, and

LAVI CONNER on behalf of themselves and a class of others similarly situated, through their

attorneys, LOEVY & LOEVY, complaining of Defendants ANGELA LOCKE, in her individual

and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA

SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE

DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA;

RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR

GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN

BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE

BRANNON, in her official capacity; current and former Illinois Department of Corrections

Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a.

LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE;

ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD; and

Unknown Illinois Department of Corrections Employees, state as follows:

**<u>Introduction</u>**

1.      This is an action pursuant to 42 U.S.C. § 1983 challenging the unjustified,

invasive and humiliating public strip search inflicted upon female prisoners at Logan

Correctional Center ("Logan") on October 31, 2013.

2.      On the morning of October 31, 2013, correctional officers and cadets arrived at

certain housing units at Logan Correctional Center, including Housing Units 11 and 15, waking

up many prisoners and interrupting others as they were just getting out of bed.  Officers

screamed at the prisoners that they were there to perform a strip search, and that anyone who did

not cooperate would be placed in segregation.

3.      Officers ordered the women to stand in the open doorways of their cells and

submit to a strip search, in view of the following persons: other cellmates present at the time;

male correctional officers, male and female IDOC training academy cadets, the then-Warden of

2

Logan Correctional Center, and others who were standing and walking by in the hallway; and scores of prisoners, cadets, and correctional officers in adjacent wings who had a clear view of the women through large windows on their cells.

4.     Many women asked to move out of the doorway of their cell or to be searched in private or outside the view of males, but their requests were refused.  Instead, cadets proceeded to strip search the prisoners by requiring them to lift their breasts, bend over and spread their buttocks, and squat and cough.

5.     Women were forced to stand naked in various positions during the group strip search for an unreasonably long period of time.  During the mass strip search, male correctional officers made derogatory comments and insulting gestures about the women's body parts and odors.  No accommodations were made for menstruating women, who were forced to remove sanitary napkins and tampons in view of their cellmates and other non-participants to the strip search.

6.     After the strip searches were completed, the women were not allowed to wash their hands or clean themselves even though they had touched intimate parts of their bodies while being searched.  Those who were menstruating were not given replacement feminine sanitary supplies.  Instead, the prisoners were ordered to get dressed, tightly handcuffed in "training" cuffs, and taken to the Logan Correctional Center day room.

7.     Women were then forced to sit facing the wall in the housing unit day room for upwards of two hours, with hands cuffed tightly behind their backs.  They were not allowed to use the bathroom, and those prisoners who were menstruating bled through their clothing and onto the floor.  Many prisoners notified the correctional staff that the cadets had handcuffed them

too tightly, causing bruising and other injuries, but correctional staff refused to loosen the handcuffs.

8.     All of these women were subjected to a dehumanizing strip search without any penological purpose, even though the Defendants were well aware that most female prisoners have survived verbal, physical, and/or sexual abuse prior to and during their incarceration and are particularly vulnerable to re-traumatization during abusive strip searches.

9.     This unconstitutional strip search was unfortunately not a one-time event, but a data point in a pattern of unconstitutional strip searches.  Indeed, many of these women had already been forced to undergo a similarly traumatizing mass strip search at Lincoln Correctional Center in March 2011, over which they had already brought suit.

10.    This strip search was a so-called "training exercise" for Illinois Department of Corrections cadets, authorized and orchestrated by Defendants Yurkovich and Locke, and one or more as-yet unknown Illinois Department of Corrections employees.  There was no legitimate purpose for subjecting the women to this public group strip search; it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of concealing contraband on their bodies.

11.    Logan Correctional Center had no justification to force the women to submit to this public group strip search or to force them to endure such an unsanitary, humiliating, degrading, and painful strip search procedure.  Nevertheless, the above Defendants and as-yet unknown Illinois Department of Corrections employees orchestrated, approved of, and facilitated this cadet training exercise and the degrading, dehumanizing, and unconstitutional public group strip search that accompanied it.

12. Plaintiffs bring this class action to compensate those who were victimized by this public group strip search and, hopefully, to end the practice of unconstitutional, degrading and unnecessary strip searches of this nature in the Illinois Department of Corrections.

## Jurisdiction and Venue

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiffs assert claims under federal law and the state law claim arises out of the same facts as the federal claims.

14. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

## Parties

15. Logan Correctional Center is one of two facilities run by the Illinois Department of Corrections ("IDOC") that houses female prisoners. It houses women in multiple levels of security as well as a reception and classification center for female prisoners. It houses approximately 1800 women.

16. Plaintiff SANDRA BROWN is 43 years old. On October 31, 2013, and at all times relevant to the events at issue in this case, she was an inmate at Logan Correctional Center. She was subjected to the degrading, unconstitutional, and unnecessary strip search described in this Complaint.

17. Plaintiff LATRASHA JOHNSON is 39 years old. On October 31, 2013, and at all times relevant to the events at issue in this case, she was an inmate at Logan Correctional Center. She was subjected to the degrading, unconstitutional, and unnecessary strip search described in this Complaint.

18.     Plaintiff JERRI LINDSEY is 53 years old.  On October 31, 2013, and at all times relevant to the events at issue in this case, she was an inmate at Logan Correctional Center.  She was subjected to the degrading, unconstitutional, and unnecessary strip search described in this Complaint.

19.     Plaintiff LAVI CONNER is 49 years old.  On October 31, 2013, and at all times relevant to the events at issue in this case, she was an inmate at Logan Correctional Center.  She was subjected to the degrading, unconstitutional, and unnecessary strip search described in this Complaint.

20.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant ANGELA LOCKE was the acting warden at Logan Correctional Center. She is sued in her individual and her official capacity for the challenged acts and omissions.  As such, Warden Locke was acting under color of law.

21.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant CLARA SHARON was an assistant warden at Logan Correctional Center. She is sued in her individual and her official capacity for the challenged acts and omissions.  As such, Assistant Warden Sharon was acting under color of law.

22.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant Assistant Warden LINNE (a.k.a. LUNNE or LINNIE) was an assistant warden at Logan Correctional Center.  She is sued in her individual and her official capacity for the challenged acts and omissions.  As such, Assistant Warden Linne was acting under color of law.

23.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant ALAN PASLEY was the Superintendent at Logan Correctional Center.  He

is sued in his individual and his official capacity for the challenged acts and omissions.  As such, ALAN PASLEY was acting under color of law.

24.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant DEBBIE DENNING was the Deputy Director of Women and Family Services for the Illinois Department of Corrections, and was acting under color of law. She is sued in her individual and her official capacity.

25.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant JOSEPH YURKOVICH was the Chief of Operations for the Illinois Department of Corrections, and was acting under color of law.  He is sued in his individual and his official capacity.

26.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant FELIPE ZAVALA was the manager of staff development and training for the Illinois Department of Corrections, and was acting under color of law.  He is sued in his individual and official capacity.

27.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant RENEE HATFIELD was a training specialist in charge of supervising strip searches with the Illinois Department of Corrections, and was acting under color of law.

28.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant SALVADOR GODINEZ was the Director of the Illinois Department of Corrections, and was acting under color of law.  He is sued in his official capacity.

29.     As of October 28, 2015, Defendant JOHN BALDWIN was employed by the Illinois Department of Corrections as the Acting Director of IDOC.  He is named in this Action as to Plaintiffs' request, on behalf of themselves and others similarly situated, for injunctive

relief only and in his official capacity.  In his capacity as the Director of IDOC, he acts under color of law.

30.     As of October 28, 2015, Defendant CHRISTINE BRANNON was employed by the Illinois Department of Corrections as the Warden of Logan Correctional Center.  She is named in this Action as to Plaintiffs' request, on behalf of themselves and others similarly situated, for injunctive relief only and in her official capacity.  In her capacity as the Warden of Logan Correctional Center, she acts under color of law.

31.     On or about October 31, 2013, and at all times relevant to the events at issue in this case Defendants Correctional Officer WARDEN; Correctional Officer BECK; Correctional Officer JOHNSON; Correctional Officer NESWICK; Correctional Officer FRANKLIN; Correctional Officer LESSMAN (a.k.a. LEESMAN); Correctional Officer SLATER; Correctional Officer LINNE (a.k.a. LUNNE or LINNIE); Correctional Officer COLE; Correctional Officer SEXTON; Correctional Officer MERRINGUE; Correctional Officer ELKEN; Correctional Officer MONTGOMERY; Major CHADDON; LT. MASON; and SGT. BRAINARD were employees of the Illinois Department of Correctional Center.  As such, these Defendants (hereinafter the "Defendant Officers") were acting under color of law.

32.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY; DENNING, ZAVALA, HATFIELD, CHADDON, MASON, and one or more as-yet Unknown IDOC employees at Logan Correctional Center were in charge of permitting the IDOC cadets to perform this public group strip search at Logan.  These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

8

33.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY, DENNING, YURKOVICH, ZAVALA, HATFIELD, and one or more as-yet Unknown IDOC employees were in charge of organizing and arranging for the IDOC cadets to perform the public group strip search at Logan Correctional Center.  These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

34.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, other Unknown IDOC employees participated in the unconstitutional strip search of Plaintiffs.  These as yet Unknown IDOC employees were acting under color of law.

### Facts Relating to the Named Plaintiffs

35.     First thing on the morning of October 31, 2013, correctional officers and cadets came to certain housing units at Logan Correctional Center, including Housing Units 11 and 15. They woke up many prisoners and interrupted others who were just waking up, including Plaintiffs BROWN, JOHNSON, LINDSEY and CONNER.  Officers screamed at prisoners that they were there to perform a strip search, and that anyone who did not cooperate would be placed in segregation.

36.     Women on those housing units, including Plaintiffs, were then strip searched in the doorway of their cells, in groups.  Prisoners, including Plaintiffs, were required to lift their breasts, bend over and spread their buttocks, and squat and cough.  Plaintiffs and the other subjects of the search were forced to stand naked in these positions for an unreasonably long period of time.

37.     Some women, including Plaintiffs BROWN, JOHNSON and CONNER were on their periods and were required, as part of the search, to remove tampons in view of everyone in

their cell and in the vicinity in the hallway including male correctional officers, IDOC training academy cadets, Defendant LOCKE, and other prisoners. After being searched, despite asking if they could replace their tampons, Plaintiff BROWN, JOHNSON and CONNER were not provided with access to a replacement tampon, and were forced to go without a tampon for two to three hours.

38.     During the time that these searches were being undertaken, male correctional officers, male and female IDOC training academy cadets, the then-Warden of Logan Correctional Center, and others who were not performing the actual strip searches were in the hallway observing the searches. Women were also searched in front of the other women who lived in their cells. Plaintiffs BROWN, JOHNSON and CONNER saw male correctional officers watching them as they were naked and undergoing strip searches.

39.     In addition, many of the cells that housed women being searched had windows that looked out onto the outside. Those windows did not have blinds and were completely open to the outside. Anyone outside the housing unit could look through the windows and observe Plaintiffs and those women who were similarly situated being stripped naked and searched, and spectators included IDOC cadets marching up to the housing unit, prisoners on adjacent housing units, and correctional officers. Plaintiffs LINDSEY and CONNER and other women being searched were strip searched in direct view of male and female IDOC cadets, who were watching these searches from outside the housing units. Plaintiffs LINDSEY and CONNER observed men outside the housing unit watching them as they underwent strip searches.

40.     After these strip searches were completed, the prisoners were ordered to get dressed and were handcuffed and taken to the Logan Correctional Center day room. Women were not allowed to wash their hands or clean themselves even though they had touched intimate

parts of their bodies while being searched.  Plaintiffs BROWN, JOHNSON and CONNER, although they were on their periods, were not allowed to clean themselves or take care of their own sanitary needs.

41.     Plaintiffs and women similarly situated to them were then forced to sit facing the wall in the housing unit day room for upwards of two hours.  They were not allowed to use the bathroom, and were handcuffed tightly behind their backs, many in painful positions.  Some women were handcuffed using special orange "training" handcuffs which handcuff more tightly than even typical prison handcuffs.  These handcuffs were extremely painful and were inappropriate for a situation in which no women were uncooperative or presented a security risk.

42.     Many of these women had been woken up for this search to be conducted and had no opportunity to use the facilities since they had gone to sleep the night before.  Despite begging to use the restroom, they were not allowed to do so.  At least one woman urinated on herself even though there was a bathroom nearby in the day room that she could have used. Another woman vomited on herself and was also denied access to the bathroom to clean herself.

43.     Women who were menstruating such as Plaintiffs BROWN, CONNER and JOHNSON were forced to sit in the dayroom in an uncomfortable position without being able to attend to their sanitary needs.  These Plaintiffs bled on their clothing and were embarrassed and uncomfortable during this time period.

44.     All of these women were subjected to a dehumanizing strip search without any penological purpose, during which officers made derogatory comments and insulting gestures about the women's body parts and odors.

45.     This unconstitutional strip search was unfortunately not a one-time event.  In fact, it was associated with a pattern of unconstitutional strip searches that had impacted many of these same women when they were incarcerated at Lincoln Correctional Center.

46.     This strip search, like the one that occurred in March 2011 at Lincoln Correctional Center, was a so-called "training exercise" for Illinois Department of Corrections cadets, organized by Defendants Yurkovich, Locke, and one or more as-yet unknown Illinois Department of Corrections employees.  There was no legitimate purpose for subjecting the women to this public group strip search – it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of concealing contraband on their bodies. There was also no need to verbally harass, threaten, or handcuff the women involved in the search – all of the women who participated, including Plaintiffs JOHNSON, BROWN and LINDSEY, were cooperative.

47.     The public group strip searches inflicted on the women at Logan are the most intrusive types of searches the government can conduct, and the manner in which they were conducted was degrading, dehumanizing, and humiliating.

48.     Defendants LOCKE, SHARON, Assistant Warden LINNE;  PASLEY, WARDEN, BECK, JOHNSON, NESWICK, FRANKLIN, LESSMAN (a.k.a. LEESMAN), SLATER, LINNE (a.k.a. LUNNE or LINNIE), COLE, SEXTON, MERRINGUE, ELKEN, MONTGOMERY, MAJOR CHADDON, LT. MASON, SGT. BRAINARD, and HATFIELD, as well as other Unknown IDOC Employees, were personally present for and participated in these searches.  Warden LOCKE ignored pleas from women being searched and held in the day room to have these searches conducted without men present, to be allowed to use the restroom, to be

12

allowed access to feminine sanitary products, and to have their handcuffs adjusted so they did not cause pain.

49.     Defendants LOCKE, SHARON, Assistant Warden LINNE, PASLEY, DENNING, CHADDON, GODINEZ, DENNING, YURKOVICH, ZAVALA and HATFIELD, as well as Unknown IDOC Employees, were responsible for planning this search, and training and supervising the other IDOC employees involved.

50.     Plaintiffs BROWN, JOHNSON and LINDSEY and numerous other women wrote grievances after this search, many the same day or the next day.  Plaintiffs wrote grievances and put them in the drop box in their housing unit.  That drop box soon overflowed with grievances. Roughly a week after the search, the drop box was suddenly emptied without explanation. Plaintiff BROWN, JOHNSON and LINDSEY and the other women who filed grievances were never given any response other than the cursory statement that the search complied with IDOC procedures.

## Class Allegations

51.     Logan Correctional Center, located in Logan County, Illinois, is one of two prisons within the Illinois Department of Corrections that houses female prisoners.

52.     Named Plaintiffs JOHNSON, BROWN, LINDSEY and CONNER seek to pursue claims both for themselves and for a class of others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(3).  Named Plaintiffs believe the class should be organized into the following two subclasses.

53.     Class I consists of all individuals who were subjected to the October 31, 2013 public group strip search at Logan Correctional Center.  Class I brings claims pursuant to the

Fourth Amendment, the Fourteenth Amendment, and the Eighth Amendment. Named Plaintiffs BROWN, LINDSEY, CONNER and JOHNSON seek to represent this class.

54.    The members of Class I include prisoners who are presently in custody as well as former Logan Correctional Center prisoners who were released at some time after October 31, 2013. Because the claims of the in-custody class members will be analyzed through the lens of the Prison Litigation Reform Act, it is appropriate to divide Class I into two separate subclasses:

Subclass A consists of: All individuals who were subjected to the October 31, 2013 public group strip search at Logan Correctional Center, and who have remained in the custody of the Illinois Department of Corrections since that time.

Subclass B consists of: All individuals who were subjected to the October 31, 2013 public group strip search at Logan Correctional Center, and who were subsequently released from the custody of the Illinois Department of Corrections.

55.    The individuals in Class I are so numerous that joinder of all members is impractical. The Named Plaintiffs estimate that more than 150 women are members of Class I.

56.    There are questions of law and fact common to the claims of the Class. Among these common questions are:

Whether the public strip search was an unreasonable search in violation of the Fourth, Eighth and Fourteenth Amendments;

Whether the use of the public strip search and/or the way in which it was conducted violates the prisoners' rights under the Fourth, Eighth and Fourteenth Amendments;

Whether the responsible IDOC employees instituted, condoned, and/or were deliberately indifferent to the risk of the violations of the Class members' rights; and

Whether the responsible IDOC employees at Logan Correctional Center failed in their supervisory responsibilities to avoid and/or put a stop to the violations of the Class members' rights.

57.     The claims of the Named Plaintiffs are typical of the claims of Class I.  The Named Plaintiffs were prisoners at Logan Correctional Center and were subjected to the October 31, 2013 public group strip search.  Named Plaintiffs BROWN and JOHNSON remain within the custody of IDOC and will represent the interests of Subclass A.  Named Plaintiffs LINDSEY and CONNER are no longer in IDOC custody, and will represent the interests of Subclass B. Collectively, they seek to prove that the public group strip search violated their rights under the Fourth, Fourteenth, and Eighth Amendments, and that each of the Defendants is liable as a result.

58.     The Named Plaintiffs will fairly and adequately represent the interests of Class I. They have retained skilled counsel with experience in class action, constitutional, and strip search litigation.

59.     The questions of law and fact common to Class I predominate over any individual issues.  In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

60.     Named Plaintiffs seek to pursue an injunctive relief claim both for themselves and for a class of others similarly situated.  Class II consists of:

All women who are currently incarcerated at Logan Correctional Center, and all women who will be incarcerated at Logan Correctional Center in the future.

61.     Class II brings claims pursuant to the Fourth Amendment, the Fourteenth Amendment, and the Eighth Amendment in order to secure injunctive relief.  Named Plaintiffs JOHNSON and BROWN seek to represent this class.

62.     The individuals in Class II are so numerous that joinder of all members is impractical.  Named Plaintiffs JOHNSON and BROWN estimate that approximately 1,800 women are members of Class II.

63.     There are questions of law and fact common to the claims of the Class.  Among these common questions are:

Whether the public strip search of the type used during the cadet training exercises at Lincoln Correctional Center and Logan Correctional Center was an unreasonable search in violation of the Fourth, Eighth and Fourteenth Amendments;

Whether the use of the public strip search and/or the way in which it was conducted violates the prisoners' rights under the Fourth, Eighth and Fourteenth Amendments;

Whether the use of the public strip search and/or the way in which it was conducted violates the prisoners' rights under the Prison Rape Elimination Act ("PREA");

Whether the responsible IDOC employees instituted, condoned, and/or were deliberately indifferent to the risk of the violations of the Class members' rights;

Whether the responsible IDOC employees failed in their supervisory responsibilities to have avoided and/or put a stop to the violations of the Class members' rights; and

Whether there is a cognizable danger that Plaintiffs will be subject to recurring violations of their constitutional rights in the manner described herein.

64.     The claims of Named Plaintiffs JOHNSON and BROWN are typical of the claims of Class II.

65.     Named Plaintiffs JOHNSON and BROWN will fairly and adequately represent the interests of Class II.  They have retained skilled counsel with experience in class action, constitutional, and strip search litigation.

66. The questions of law and fact common to Class II predominate over any individual issues. In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

### Count I – Claims Pursuant to 42 U.S.C. § 1983
### Violations of the Fourth & Fourteenth Amendments

67. Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

68. There was no valid penological justification for the October 13, 2013 public group strip search.

69. By instituting and continuing the public group strip search described in fuller detail above, Defendants subjected Named Plaintiffs and the members of the Class to an unreasonable search in violation of the Fourth Amendment.

70. As a direct result of the express decisions of LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, HATFIELD, and one or more as-yet Unknown IDOC employees in charge of organizing, approving, and/or arranging for this public group strip search, the Named Plaintiffs and members of the Class were subjected to unreasonable body searches that were demeaning, dehumanizing, and humiliating. Furthermore, these Defendants had supervisory responsibility to terminate the public group strip search and failed to do so.

71. On information and belief, the Defendants executed this unconstitutional public strip search at Logan Correctional Center pursuant to a policy or practice implemented and overseen by Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD, and other unknown IDOC Employees regarding strip searches conducted as training exercises for IDOC cadets. Accordingly, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH,

ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of the Defendants who undertook this search. In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs and others similarly situated by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

72.      On information and belief, LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD had notice of widespread policies and practices of how the IDOC employees under their supervision and control conducted these searches, pursuant to which prisoners like Plaintiffs and those similarly situated were subjected to unconstitutional strip searches, as described more fully above.  Despite knowledge of these problematic policies and practices, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD did nothing to ensure that the prisoners at Logan Correctional Center were treated in accordance with the rights afforded them by the United States Constitution.  These widespread policies and practices were allowed to flourish because Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of the IDOC employees under their supervision.  In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs and those similarly situated by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

18

73.     The above-described policies and practices were able to exist and thrive because Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD were deliberately indifferent to the problem, thereby effectively ratifying it.

74.     The injuries of Plaintiffs and those similarly situated to them were caused by employees of the IDOC, including but not limited to the named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

WHEREFORE, Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD; and Unknown Illinois Department of Corrections Employees

### Count II – Claims Pursuant to 42 U.S.C. § 1983
### Violations of the Eighth and Fourteenth Amendment

75.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

76.     There was no valid penological justification for the October 13, 2013 public group strip search.

77.     By instituting and continuing the group strip search described in fuller detail above, Defendants subjected Named Plaintiffs and the members of the Class to punishment in violation of the Eighth Amendment.

78.     As described more fully above, the Defendants conducted the public group strip search in a harassing manner intended to humiliate the prisoners.

79.     As a direct result of the express decisions of LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD, and one or more as-yet Unknown IDOC employees in charge of organizing, approving, training the involved officers and/or arranging for this public group strip search, the Named Plaintiffs and members of the Class were subjected to unreasonable body searches that were demeaning, dehumanizing, and humiliating.  Furthermore, these Defendants as well as Defendant CHADDON had supervisory responsibility to terminate the public group strip search and failed to do so.

80.     On information and belief, the Defendants executed this unconstitutional public strip search at Logan Correctional Center pursuant to a policy or practice implemented and overseen by Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD and other unknown IDOC Employees regarding strip searches conducted as training exercises for IDOC cadets.  Accordingly, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of the Defendants who undertook this search. In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING,

YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs and others similarly situated by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

81.     On information and belief, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD had notice of widespread policies and practices of how the IDOC employees under their supervision and control conducted these searches, pursuant to which prisoners like Plaintiffs and those similarly situated were subjected to unconstitutional strip searches, as described more fully above. Despite knowledge of these problematic policies and practices, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD did nothing to ensure that the prisoners at Logan Correctional Center were treated in accordance with the rights afforded them by the United States Constitution.  These widespread policies and practices were allowed to flourish because Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of the IDOC employees under their supervision.  In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs and those similarly situated by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

82.     The above-described policies and practices were able to exist and thrive because Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING,

YURKOVICH, ZAVALA, and HATFIELD were deliberately indifferent to the problem, thereby effectively ratifying it.

83.     The injuries of Plaintiffs and those similarly situated to them were caused by employees of the IDOC, including but not limited to the named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

84.     As a direct and proximate result of Defendants' conduct described in this Complaint, the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs and those similarly situated, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

WHEREFORE, Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD; and Unknown Illinois Department of Corrections Employees Defendants

ANGELA LOCKE, in her individual and official capacity as former Warden of Logan

Correctional Center; Assistant Warden SHARON; ALAN PASLEY; DEBBIE DENNING;

JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE

HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ,

in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in

his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her

official capacity; current and former Illinois Department of Corrections Employees WARDEN;

BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER;

LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MAJOR

CHADDON; and Unknown Illinois Department of Corrections Employees.

### Count III
### 42 U.S.C. § 1983 – Conspiracy

85.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

86.     Defendants reached an agreement among themselves to deprive the prisoners

subjected to the unconstitutional strip search described in this Complaint of their constitutional

rights and to protect one another from liability for depriving the prisoners of their rights, all as

described in the various paragraphs of this Complaint.

87.     In furtherance of this conspiracy, each of the co-conspirators committed overt acts

and was an otherwise willful participant in joint activity.

88.     The misconduct described in this Count was undertaken intentionally, with

malice, and/or with reckless indifference to the rights of Plaintiffs and other prisoners similarly

situated to them.

89.     As a direct and proximate result of the illicit prior agreement referenced above,

the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs and those

similarly situated, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

90.     These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

WHEREFORE, Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD; and Unknown Illinois Department of Corrections Employees Defendants ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden SHARON; ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ,

in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MAJOR CHADDON; and Unknown Illinois Department of Corrections Employees.

### Count IV
### 42 U.S.C. § 1983 – Failure to Intervene

91.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

92.     As described more fully above, Defendants each had a reasonable opportunity to prevent the violation of the constitutional rights of the prisoners housed at Logan Correctional Center who were subjected to this unconstitutional search had they been so inclined.  They failed to do so.

93.     Defendants' actions were undertaken intentionally, with malice, and/or with reckless indifference to the rights of the prisoners involved in this strip search.

94.     As a direct and proximate result of Defendants' misconduct, the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs and those similarly situated, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

95.     These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

WHEREFORE, Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees,

attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in
her individual and official capacity as former Warden of Logan Correctional Center; Assistant
Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN
PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity;
FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of
Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department
of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center
CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of
Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN
(a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON;
MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT.
BRAINARD; and Unknown Illinois Department of Corrections Employees Defendants
ANGELA LOCKE, in her individual and official capacity as former Warden of Logan
Correctional Center; Assistant Warden SHARON; ALAN PASLEY; DEBBIE DENNING;
JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE
HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ,
in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in
his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her
official capacity; current and former Illinois Department of Corrections Employees WARDEN;
BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER;
LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MAJOR
CHADDON; and Unknown Illinois Department of Corrections Employees.

**Count V**
**42 U.S.C. § 1983 – Prison Rape Elimination Act**

96.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

97.     By executing and encouraging the unconstitutional strip search set forth in this Complaint, Defendants have violated and continue to violate several provisions of the Prison Rape Elimination Act National Standards, 28 C.F.R. § 115, promulgated by the United States Attorney General pursuant to the Prison Rape Elimination Act, 42 U.S.C. § 15607 (hereinafter "PREA").

98.     Defendants have conducted a series of cross-gender strip searches of Plaintiffs and all similarly situated prisoners, in violation of 28 C.F.R. § 115.15, which prohibits cross-gender participation by correctional staff in strip searches of prisoners absent exigent circumstances.  28 C.F.R. § 115.15(a).

99.     Plaintiffs were forced in the course of this strip search to dress themselves in the view of nonmedical staff of the opposite gender, which is also a violation of 28 C.F.R. § 115.15(d).

100.     In addition, the intentional observation by spectator males of the strip searches of female prisoners for no legitimate purpose during these strip searches rose to the level of "sexual abuse" pursuant to the PREA.  Those standards define "voyeurism by a staff member" as:

> an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions.

28 C.F.R. § 115.6; *see id.* (making clear that "voyeurism" constitutes "sexual abuse"). Because male observation of female inmates during the mass strip search at Logan was an obvious

invasion of privacy entirely unrelated to official duties, it not only violated inmates' privacy but rose to the level of sexual abuse.

101.    Finally, the use of derogatory and demeaning language during the strip search at issue rose to the level of "sexual harassment" pursuant to the PREA.  28 C.F.R. § 115.6 (defining "sexual harassment" to include "[r]epeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member . . . , including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures"); *see also* 28 C.F.R. § 115.11 (requiring that an agency "have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the agency's approach to preventing, detecting, and responding to such conduct").

102.    As a direct and proximate result of Defendants' misconduct, the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs and those similarly situated, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

103.    The Illinois Department of Corrections permits and often conducts public group strip searches during "cadet training exercises" in the manner described herein, using methods which violate the PREA.  There is a cognizable danger that Plaintiffs will be subjected to further behavior by Defendants and others with the Illinois Department of Corrections that violates PREA.  There were multiple earlier searches that were nearly identical which took place at Lincoln Correctional Center.  There is thus a cognizable danger that Plaintiffs will be subjected to recurrent violations of their constitutional rights in the manner described herein.  An injunction prohibiting such strip searches is an appropriate judicial remedy to prevent the recurrence of these improper procedures.

### Count VI – Injunctive Relief

104.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

105.     The Illinois Department of Corrections permits and often conducts public group strip searches during "cadet training exercises" in the manner described herein.  There were multiple earlier searches that were nearly identical which took place at Lincoln Correctional Center.  There is thus a cognizable danger that Plaintiffs will be subjected to recurrent violations of their constitutional rights in the manner described herein.  An injunction prohibiting such strip searches is an appropriate judicial remedy to prevent the recurrence of these improper procedures.

WHEREFORE, Named Plaintiffs JOHNSON, CONNER and BROWN, on behalf of themselves and Class II, respectfully demand that the Court enjoin Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, YURKOVICH, ZAVALA, BRANNON and BALDWIN, in their official capacities, from continuing the acts and practices set forth in the above paragraphs, and for any other and further equitable relief as it may deem just and proper.

### Further Request for Relief

WHEREFORE, Plaintiffs respectfully request that this Court certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) for injunctive relief and (b)(3) for damages, and appoint the undersigned as class counsel pursuant to Rule 23(g).

### Jury Demand

Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand a trial by jury on behalf of themselves and the Class Members on all issues so triable.

RESPECTFULLY SUBMITTED,


/s/ Tara Thompson
Attorneys for Plaintiffs

Arthur Loevy
Michael Kanovitz
Jon Loevy
Tara Thompson
Ruth Brown
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900