**E-FILED**
Monday, 08 August, 2016  03:43:32 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

SANDRA BROWN, #R-35900, et al.,    )
           )
      Plaintiffs,    )
           )
vs.        )    No. 15-1447-MMM
           )
ANGELA LOCKE, et al.,    )
           )
      Defendants.    )

### <u>ANSWER FOR DEFENDANTS LEESMAN, MERREIGHN, AND SLATER</u>

The Defendants, AARON LEESMAN, JOSHUA MERREIGHN, and MONICA SLATER, by and through their attorney, Lisa Madigan, Attorney General of the State of Illinois, provide the following answers and affirmative defenses directed to Plaintiffs' complaint [d/e 1] pursuant to the Court's order on Defendants' motion to dismiss [d/e 56]:

### Introduction

1.    This is an action pursuant to 42 U.S.C. § 1983 challenging the unjustified, invasive and humiliating public strip search inflicted upon female prisoners at Logan Correctional Center ("Logan") on October 31, 2013.

> Answer:  Defendants admit Plaintiffs filed suit pursuant to 42 U.S.C. § 1983 and that strip searches and cell searches were performed at Logan Correctional Center, which houses female prisoners, on October 31, 2013.  Defendants deny the remaining allegations contained in paragraph 1.

2.    On the morning of October 31, 2013, correctional officers and cadets arrived at certain housing units at Logan Correctional Center, including Housing Units 11 and 15, waking up many prisoners and interrupting others as they were just getting out of bed. Officers screamed at the prisoners that they were there to perform a strip search, and that anyone who did not cooperate would be placed in segregation.

Answer:  Defendants admit that correctional officers and cadets arrived at housing unit 11 at approximately 9:00 a.m. on October 31, 2013, to perform searches of inmates and their cells and that failure to cooperate would result in an inmate going to segregation. Defendants admit that the officers and cadets later searched the inmates and cells on housing unit 15.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether the inmates were woken up at that time. Defendant Slater admits that the persons present for the search would have yelled instructions and information to the inmates but deny the Plaintiffs' description of their actions.  Defendants Leesman and Merreighn lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what happened in the housing units at that time.

3.      Officers ordered the women to stand in the open doorways of their cells and submit to a strip search, in view of the following persons: other cellmates present at the time; male correctional officers, male and female IDOC training academy cadets, the then-Warden of Logan Correctional Center, and others who were standing and walking by in the hallway; and scores of prisoners, cadets, and correctional officers in adjacent wings who had a clear view of the women through large windows on their cells.

Answer:  Defendant Slater denies the allegations contained in paragraph 3.  Defendants Leesman and Merreign deny that they witnessed any part of the strip search and lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3.

4.      Many women asked to move out of the doorway of their cell or to be searched in private or outside the view of males, but their requests were refused. Instead, cadets proceeded to strip search the prisoners by requiring them to lift their breasts, bend over and spread their buttocks, and squat and cough.

Answer:  Defendants admit that the inmates were to be strip searched and that the prisoners are required to manipulate their own body parts during a visual inspection by officers performing the search.  Defendant Slater denies that inmates were searched in the doorway of their cell or that males were present for the searches.  Defendants Leesman and Merreighn deny that they witnessed the strip searches and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4.

2

5.      Women were forced to stand naked in various positions during the group strip search for an unreasonably long period of time. During the mass strip search, male correctional officers made derogatory comments and insulting gestures about the women's body parts and odors. No accommodations were made for menstruating women, who were forced to remove sanitary napkins and tampons in view of their cellmates and other non-participants to the strip search.

> Answer:  Defendants admit that menstruating female inmates are required to remove sanitary napkins or tampons solely for purposes of the strip search.  Defendant Slater denies the remaining allegations contained in paragraph 5.  Defendants Leesman and Merreighn lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5.

6.      After the strip searches were completed, the women were not allowed to wash their hands or clean themselves even though they had touched intimate parts of their bodies while being searched. Those who were menstruating were not given replacement feminine sanitary supplies. Instead, the prisoners were ordered to get dressed, tightly handcuffed in "training" cuffs, and taken to the Logan Correctional Center day room.

> Answer:  Defendants admit that different colored handcuffs are used for training purposes and that inmates were escorted to the dayroom.  Defendant Slater denies the remaining allegations contained in paragraph 6.  Defendants Leesman and Merreighn lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6.

7.      Women were then forced to sit facing the wall in the housing unit day room for upwards of two hours, with hands cuffed tightly behind their backs. They were not allowed to use the bathroom, and those prisoners who were menstruating bled through their clothing and onto the floor. Many prisoners notified the correctional staff that the cadets had handcuffed them too tightly, causing bruising and other injuries, but correctional staff refused to loosen the handcuffs.

Answer:  Defendants lack knowledge or information sufficient to form a belief as to unspecified prisoners' complaints.  Defendants Slater and Merreighn deny the remaining allegations contained in paragraph 7.  Defendant Leesman lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7.

8.      All of these women were subjected to a dehumanizing strip search without any penological purpose, even though the Defendants were well aware that most female prisoners have survived verbal, physical, and/or sexual abuse prior to and during their incarceration and are particularly vulnerable to re-traumatization during abusive strip searches.

Answer:  Defendants deny the allegations contained in paragraph 8.

9.      This unconstitutional strip search was unfortunately not a one-time event, but a data point in a pattern of unconstitutional strip searches. Indeed, many of these women had already been forced to undergo a similarly traumatizing mass strip search at Lincoln Correctional Center in March 2011, over which they had already brought suit.

Answer:  Defendants admit a lawsuit had been filed concerning a strip search at Lincoln Correctional Center in March 2011; Defendants dispute the merits of both lawsuits.

10.      This strip search was a so-called "training exercise" for Illinois Department of Corrections cadets, authorized and orchestrated by Defendants Yurkovich and Locke, and one or more as-yet unknown Illinois Department of Corrections employees. There was no legitimate purpose for subjecting the women to this public group strip search; it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of concealing contraband on their bodies.

Answer:  Defendants deny that there was a "public group strip search" but admit that searches were conducted in part as training exercises for Illinois Department of Corrections cadets that were authorized and planned by Defendant Yurkovich and facilitated by Defendant Locke.  Defendants deny the remaining allegations contained in paragraph 10.

11.     Logan Correctional Center had no justification to force the women to submit to this public group strip search or to force them to endure such an unsanitary, humiliating, degrading, and painful strip search procedure. Nevertheless, the above Defendants and as-yet unknown Illinois Department of Corrections employees orchestrated, approved of, and facilitated this cadet training exercise and the degrading, dehumanizing, and unconstitutional public group strip search that accompanied it.

> Answer:  Defendants deny that the searches were "public group strip" searches or that they were planned or carried out in the manner alleged by Plaintiffs.  Defendants deny the remaining allegations contained in paragraph 11.

12.     Plaintiffs bring this class action to compensate those who were victimized by this public group strip search and, hopefully, to end the practice of unconstitutional, degrading and unnecessary strip searches of this nature in the Illinois Department of Corrections.

> Answer:  Defendants deny that Plaintiffs are entitled to compensation or injunctive relief.

## Jurisdiction and Venue

13.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 as Plaintiffs assert claims under federal law and the state law claim arises out of the same facts as the federal claims.

> Answer:  Defendants do not dispute that this Court has subject matter jurisdiction over the claims arising under federal law; Defendants dispute that this Court has subject matter jurisdiction over any state law claims.

14.     Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to the claims in this case all occurred in this judicial district.

> Answer:  Defendants do not dispute that venue is proper in the Central District of Illinois. Defendants dispute the merit and accuracy of Plaintiff's claims.

## Parties

15.     Logan Correctional Center is one of two facilities run by the Illinois Department of Corrections ("IDOC") that houses female prisoners. It houses women in multiple levels of security as well as a reception and classification center for female prisoners. It houses approximately 1800 women.

> Answer:  Defendants admit that Logan Correctional Center is a facility run by the Illinois Department of Corrections that houses female prisoners.  Defendants admit that the facility houses multiple levels of security inmates and serves as a receiving and classification center for female prisoners.  Defendants admit that it housed approximately 1800 women as of July 2015.

16.     Plaintiff SANDRA BROWN is 43 years old. On October 31, 2013, and at all times relevant to the events at issue in this case, she was an inmate at Logan Correctional Center. She was subjected to the degrading, unconstitutional, and unnecessary strip search described in the complaint.

> Answer:  Defendants deny that Plaintiff Sandra Brown, R35900, is presently 43 years old.  Defendants admit that Brown was an inmate at Logan Correctional Center on October 31, 2013.  Defendants deny that they subjected her to a strip search conducted in the manner alleged in the complaint.

17.     Plaintiff LATRASHA JOHNSON is 39 years old. On October 31, 2013, and at all times relevant to the events at issue in this case, she was an inmate at Logan Correctional Center. She was subjected to the degrading, unconstitutional, and unnecessary strip search described in this Complaint.

> Answer:  Defendants admit that Latrasha Johnson, R37931, is 39 years old.  Defendants admit that Johnson was an inmate at Logan Correctional Center on October 31, 2013.  Defendants deny that they subjected her to a strip search conducted in the manner alleged in the complaint.

18.     Plaintiff JERRI LINDSEY is 53 years old. On October 31, 2013, and at all times relevant to the events at issue in this case, she was an inmate at Logan Correctional Center. She

was subjected to the degrading, unconstitutional, and unnecessary strip search described in this

Complaint.

> Answer:  Defendants deny that Jeri Lindsey, B49150, is 54 years old at the present time. Defendants admit that Lindsey was an inmate at Logan Correctional Center on October 31, 2013.  Defendants deny that they subjected her to a strip search conducted in the manner alleged in the complaint.

19.    Plaintiff LAVI CONNER is 49 years old. On October 31, 2013, and at all times

relevant to the events at issue in this case, she was an initiate at Logan Correctional Center. She

was subjected to the degrading, unconstitutional, and unnecessary strip search described in this

Complaint.

> Answer:  Defendants admit that Lavi Conner, N87271, is 49 years old.  Defendants admit that Conner was an inmate at Logan Correctional Center on October 31, 2013. Defendants deny that they subjected her to a strip search conducted in the manner alleged in the complaint.

20.    On or about October 31, 2013, and at all times relevant to the events at issue in

this case, Defendant ANGELA LOCKE was the acting warden at Logan Correctional Center.

She is sued in her individual and her official capacity for the challenged acts and omissions. As

such, Warden Locke was acting under color of law.

> Answer:  Defendants admit that Angela Locke was the acting Warden at Logan Correctional Center on October 31, 2013.  Defendants admit that Locke would have acted under color of law in her employment with the Illinois Department of Corrections. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20.

21.    On or about October 31, 2013, and at all times relevant to the events at issue in

this case, Defendant CLARA SHARON was an assistant warden at Logan Correctional Center.

She is sued in her individual and her official capacity for the challenged acts and omissions. As

such, Assistant Warden Sharon was acting under color of law.

> Answer:  Defendants admit that Clara Charron was Assistant Warden of Programs at Logan Correctional Center on October 31, 2013.  Defendants admit that Charron would have acted under color of law in her employment with the Illinois Department of

Corrections.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21.

22.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant Assistant Warden LINNE (a.k.a. LUNNE or LINNIE) was an assistant warden at Logan Correctional Center. She is sued in her individual and her official capacity for the challenged acts and omissions. As such, Assistant Warden Linne was acting under color of law.

Answer:  Defendants deny the allegations contained in paragraph 22.

23.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant ALAN PASLEY was the Superintendent at Logan Correctional Center. He is sued in his individual and his official capacity for the challenged acts and omissions. As such, ALAN PASLEY was acting under color of law.

Answer:  Defendants admit that Alan Pasley was the Superintendent at Logan Correctional Center for the date relevant to this suit.  Defendants admit that Pasley would have acted under color of law in his employment with the Illinois Department of Corrections.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23.

24.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant DEBBIE DENNING was the Deputy Director of Women and Family Services for the Illinois Department of Corrections, and was acting under color of law. She is sued in her individual and her official capacity.

Answer:  Defendants admit that Debbie Denning was the former Chief of Family and Support Services.  Defendants deny that Debbie Denning was in that position for all of the times relevant to this case and deny that she still works for IDOC.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 24.

25.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendant JOSEPH YURKOVICH was the Chief of Operations for the Illinois

Department of Corrections, and was acting under color of law. He is sued in his individual and

his official capacity.

> Answer:  Defendants admit that Joseph Yurkovich was the Chief of Operations for the Illinois Department of Corrections for the dates relevant to this suit.  Defendants admit that Yurkovich would have acted under color of law in his employment with the Illinois Department of Corrections.  Defendants deny that Defendant Yurkovich is still the Chief of Operations.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 25.

> 26.     On or about October 31, 2013, and at all times relevant to the events at issue in

this case, Defendant FELIPE ZAVALA was the manager of staff development and training for

the Illinois Department of Corrections, and was acting under color of law. He is sued in his

individual and official capacity.

> Answer:  Defendants admit that Felipe Zavala was the manager of training and development for the Illinois Department of Corrections in October 2013 and acted under color of law in his employment with the Illinois Department of Corrections.  Defendants deny that Defendant Zavala still holds the position of manager of training and development.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26.

> 27.     On or about October 31, 2013, and at all times relevant to the events at issue in

this case, Defendant RENEE HATFIELD was a training specialist in charge of supervising strip

searches with the Illinois Department of Corrections, and was acting under color of law.

> Answer:  Defendants admit that Renee Hatfield was a staff development specialist for the Illinois Department of Corrections in October 2013 and acted under color of law in her employment with the Illinois Department of Corrections.

> 28.     On or about October 31, 2013, and at all times relevant to the events at issue in

this case, Defendant SALVADOR GODINEZ was the Director of the Illinois Department of

Corrections, and was acting under color of law. He is sued in his official capacity.

> Answer:  Defendants admit that Salvador Godinez was the Director for the Illinois Department of Corrections for the dates relevant to this suit.  Defendants admit that Godinez would have acted under color of law in his employment with the Illinois Department of Corrections.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 28.

29.     As of October 28, 2015, Defendant JOHN BALDWIN was employed by the Illinois Department of Corrections as the Acting Director of IDOC. He is named in this Action as to Plaintiffs' request, on behalf of themselves and others similarly situated, for injunctive relief only and in his official capacity. In his capacity as the Director of IDOC, he acts under color of law.

> Answer:  Defendants admit that John Baldwin is presently the Acting Director of the Illinois Department of Corrections.  Defendants deny that the October 28, 2015, date is the date he started in that role.  Defendants admit that John Baldwin acts under the color of law in his capacity as Acting Director.  Defendants deny that Plaintiffs are entitled to any injunctive relief or other relief from Baldwin.

30.     As of October 28, 2015, Defendant CHRISTINE BRANNON was employed by the Illinois Department of Corrections as the Warden of Logan Correctional Center. She is named in this Action as to Plaintiffs' request, on behalf of themselves and others similarly situated, for injunctive relief only and in her official capacity. In her capacity as the Warden of Logan Correctional Center, she acts under color of law.

> Answer:  Defendants deny that Christine Brannon is presently the Warden of Logan Correctional Center.  Defendants deny that Plaintiffs are entitled to any injunctive relief or to any other relief from Brannon.

31.     On or about October 31, 2013, and at all times relevant to the events at issue in this case Defendants Correctional Officer WARDEN; Correctional Officer BECK; Correctional Officer JOHNSON; Correctional Officer NESWICK; Correctional Officer FRANKLIN; Correctional Officer LESSMAN (a.k.a. LEESMAN); Correctional Officer SLATER; Correctional Officer LINNE (a.k.a. LLTNNE or LINNIE); Correctional Officer COLE; Correctional Officer SEXTON; Correctional Officer MERRINGUE; Correctional Officer ELKEN; Correctional Officer MONTGOMERY; Major CHADDON; LT. MASON; and SGT.

BRAINARD were employees of the Illinois Department of Correctional Center. As such, these Defendants (hereinafter the "Defendant Officers") were acting under color of law.

>Answer:  Defendants admit that most of the people named above were employees of the Illinois Department of Corrections on October 31, 2013, and that any actions they took in the course of their employment were under color of law.  Defendants admit that they were employees of the Illinois Department of Corrections on October 31, 2013, and that they acted under color of law while performing their job duties.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 31.

>32.  On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY; DENNING, ZAVALA, HATFIELD, CHADDON, MASON, and one or more as-yet Unknown IDOC employees at Logan Correctional Center were in charge of permitting the IDOC cadets to perform this public group strip search at Logan. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

>Answer:  Defendants deny that there was a "public group strip search" and Defendant Slater denies that anyone permitted IDOC cadets to perform a public group strip search. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 32.

>33.  On or about October 31, 2013, and at all times relevant to the events at issue in this case, Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY, DENNING, YURKOVICH, ZAVALA, HATFIELD, and one or more as-yet Unknown IDOC employees were in charge of organizing and arranging for the IDOC cadets to perform the public group strip search at Logan Correctional Center. These as-yet Unknown Defendant IDOC Employees were employed by IDOC and, as such, were acting under color of law.

>Answer:  Defendant Slater denies that anyone arranged for or organized a "public group strip search."  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33.

34.     On or about October 31, 2013, and at all times relevant to the events at issue in this case, other Unknown IDOC employees participated in the unconstitutional strip search of Plaintiffs. These as yet Unknown IDOC employees were acting under color of law.

> Answer:  Defendant Slater denies that there was an unconstitutional strip search of Plaintiff or others on October 31, 2013.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34.

### Facts Relating to the Named Plaintiffs

35.     First thing on morning of October 31, 2013, correctional officers and cadets came to certain housing units at Logan Correctional Center, including Housing Units 11 and 15. They woke up many prisoners and interrupted others who were just waking up, including Plaintiffs BROWN, JOHNSON, LINDSEY and CONNER. Officers screamed at prisoners that they were there to perform a strip search, and that anyone who did not cooperate would be placed in segregation.

> Answer:  Defendants admit that correctional officers and cadets arrived at housing unit 11 at approximately 9:00 a.m. on October 31, 2013, to perform searches of inmates and their cells and that failure to cooperate would result in an inmate going to segregation. Defendants admit that the officers and cadets later searched the inmates and cells on housing unit 15.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning whether the inmates were woken up at that time. Defendant Slater admits that the persons present for the search would have yelled instructions and information to the inmates but deny the Plaintiffs' description of their actions.  Defendants Leesman and Merreighn lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning what happened in the housing units at that time.

36.     Women on those housing units, including Plaintiffs, were then strip searched in the doorway of their cells, in groups. Prisoners, including Plaintiffs, were required to lift their breasts, bend over and spread their buttocks, and squat and cough. Plaintiffs and the other subjects of the search were forced to stand naked in these positions for an unreasonably long period of time.

Answer:  Defendants admit that the inmates were strip searched and that the prisoners are required to manipulate their own body parts during a visual inspection by officers performing the search.  Defendant Slater denies the remaining allegations contained in paragraph 36.  Defendants Leesman and Merreighn lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 36.

37.     Some women, including Plaintiffs BROWN, JOHNSON and CONNER were on their periods and were required, as part of the search, to remove tampons in view of everyone in their cell and in the vicinity in the hallway including male correctional officers, IDOC training academy cadets, Defendant LOCKE, and other prisoners. After being searched, despite asking if they could replace their tampons, Plaintiff BROWN, JOHNSON and CONNER were not provided with access to a replacement tampon, and were forced to go without a tampon for two to three hours.

Answer:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that Plaintiffs Brown, Johnson, and Conner were menstruating on October 31, 2013.  Defendants admit that menstruating inmates would have had to remove their tampons solely for purposes of the search.  Defendants Slater and Merreighn deny the remaining allegations contained in paragraph 37.  Defendant Leesman lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 37.

38.     During the time that these searches were being undertaken, male correctional officers, male and female IDOC training academy cadets, the then-Warden of Logan Correctional Center, and others who were not performing the actual strip searches were in the hallway observing the searches. Women were also searched in front of the other women who lived in their cells. Plaintiffs BROWN, JOHNSON and CONNER saw male correctional officers watching them as they were naked mid undergoing strip searches.

Answer:  Defendant Slater admits that female IDOC training cadets and Defendant Locke were present on the housing units for the searches; however Defendant Slater denies that male officers, male cadets, or those not needed to perform the searches were watching the searches.  Defendants Leesman and Merreighn deny that they observed any strip searches

13

and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 38.

39.     In addition, many of the cells that housed women being searched had windows that looked out onto the outside. Those windows did not have blinds and were completely open to the outside. Anyone outside the housing unit could look through the windows and observe Plaintiffs and those women who were similarly situated being stripped naked and searched, and spectators included IDOC cadets marching up to the housing unit, prisoners on adjacent housing units, and correctional officers. Plaintiffs LINDSEY and CONNER and other women being searched were strip searched in direct view of male and female IDOC cadets, who were watching these searches from outside the housing units. Plaintiffs LINDSEY and CONNER observed men outside the housing unit watching them as they underwent strip searches.

Answer:  Defendants admit that cells have windows to the outside and that they do not have window coverings.  Defendants deny that anyone passing by outside was able to see the inmates searched in the housing units.  Defendant Slater denies that male or female cadets or other males were spectators or put in a position to watch searches from outside the housing units and deny the remaining allegations contained in paragraph 39. Defendants Leesman and Merreighn deny that they observed any strip searches and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 39.

40.     After these strip searches were completed, the prisoners were ordered to get dressed and were handcuffed and taken to the Logan Correctional Center day room. Women were not allowed to wash their hands or clean themselves even though they had touched intimate parts of their bodies while being searched. Plaintiffs BROWN, JOHNSON and CONNER, although they were on their periods, were not allowed to clean themselves or take care of their own sanitary needs.

Answer:  Defendant Slater admits that the prisoners were ordered to get dressed after they were searched and Defendants admit the inmates were taken to the dayroom.  Defendants Merreighn and Slater deny that the prisoners were prohibited from washing their hands, cleaning themselves, or taking care of their sanitary needs.  Defendant Leesman lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 40.

41.     Plaintiffs and women similarly situated to them were then forced to sit facing the wall in the housing unit day room for upwards of two hours. They were not allowed to use the bathroom, and were handcuffed tightly behind their backs, many in painful positions. Some women were handcuffed using special orange "training" handcuffs which handcuff more tightly than even typical prison handcuffs. These handcuffs were extremely painful and were inappropriate for a situation in which no women were uncooperative or presented a security risk.

Answer:  Defendants admit that training cuffs, which only differ from regularly used handcuffs in color, were used during the training exercise.  Defendants deny the remaining allegations contained in paragraph 41.

42.     Many of these women had been woken up for this search to be conducted and had no opportunity to use the facilities since they had gone to sleep the night before. Despite begging to use the restroom, they were not allowed to do so. At least one woman urinated on herself even though there was a bathroom nearby in the day room that she could have used. Another woman vomited on herself and was also denied access to the bathroom to clean herself.

Answer:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42.

43.     Women who were menstruating such as Plaintiffs BROWN, CONNER and JOHNSON were forced to sit in the dayroom in an uncomfortable position without being able to attend to their sanitary needs. These Plaintiffs bled on their clothing and were embarrassed and uncomfortable during this time period.

Answer:  Defendants Slater and Merreighn deny that women were forced to sit in uncomfortable positions without being allowed to "attend to their sanitary needs" or forced to bleed on their clothing.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43.

44.     All of these women were subjected to a dehumanizing strip search without any penological purpose, during which officers made derogatory comments and insulting gestures about the women's body parts and odors.

Answer:  Defendants deny the allegations contained in paragraph 44.

45.     This unconstitutional strip search was unfortunately not a one-time event. In fact, it was associated with a pattern of unconstitutional strip searches that had impacted many of these same women when they were incarcerated at Lincoln Correctional Center.

Answer:  Defendants deny the allegations contained in paragraph 45.

46.     This strip search, like the one that occurred in March 2011 at Lincoln Correctional Center, was a so-called "training exercise" for Illinois Department of Corrections cadets, organized by Defendants Yurkovich, Locke, and one or more as-yet unknown Illinois Department of Corrections employees. There was no legitimate purpose for subjecting the women to this public group strip search — it was unrelated to institutional security, discipline or order, and none of the women searched were suspected of concealing contraband on their bodies. There was also no need to verbally harass, threaten, or handcuff the women involved in the search — all of the women who participated, including Plaintiffs JOHNSON, BROWN and LINDSEY, were cooperative.

Answer:  Defendants admit that the search on October 31, 2013, was in part a training exercise for Illinois Department of Corrections cadets organized by Defendant Yurkovich and facilitated by Defendant Locke.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that all of the women were cooperative.  Defendants deny the remaining allegations contained in paragraph 46.

47.     The public group strip searches inflicted on the women at Logan are the most intrusive types of searches the government can conduct, and the manner in which they were conducted was degrading, dehumanizing, and humiliating.

Answer: Defendants dispute Plaintiffs' descriptions of the searches and deny the allegations contained in paragraph 47.

48.    Defendants LOCKE, SHARON, Assistant Warden LINNE; PASLEY, WARDEN, BECK, JOHNSON, NESWICK, FRANKLIN, LESSMAN (a.k.a. LEESMAN), SLATER, LINNE (a.k.a. LUNNE or LINNIE), COLE, SEXTON, MERRINGUE, ELKEN, MONTGOMERY, MAJOR CHADDON, LT. MASON, SGT. BRAINARD, and HATFIELD, as well as other Unknown IDOC Employees, were personally present for and participated in these searches. Warden LOCKE ignored pleas from women being searched and held in the day room to have these searches conducted without men present, to be allowed to use the restroom, to be allowed access to feminine sanitary products, and to have their handcuffs adjusted so they did not cause pain.

Answer: Defendant Slater admits that she was present for and participated in the searches on October 31, 2013. Defendant Leesman admits that he participated in the cell searches after the women were taken off the wing but denies that he participated or was present for the strip searches. Defendant Merreighn denies that he was present for or participated in the searches. Defendants lack knowledge or information sufficient to form a belief as to what was said or done by Warden Locke or all of the persons who were present for the searches. Defendants deny the remaining allegations contained in paragraph 48.

49.    Defendants LOCKE, SHARON, Assistant Warden LINNE, PASLEY, DENNING, CHADDON, GODINEZ, DENNING, YURKOVICH, ZAVALA and HATFIELD, as well as Unknown IDOC Employees, were responsible for planning this search, and training and supervising the other IDOC employees involved.

Answer: Defendant Slater admits that Defendant Locke facilitated and oversaw the search and that Defendant Hatfield participated in the training and supervision during the search. Defendants dispute the characterization of the searches at issue. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 49.

50.    Plaintiffs BROWN, JOHNSON and LINDSEY and numerous other women wrote grievances after this search, many the same day or the next day. Plaintiffs wrote grievances and

put them in the drop box in their housing unit. That drop box soon overflowed with grievances.

Roughly a week after the search, the drop box was suddenly emptied without explanation.

Plaintiff BROWN, JOHNSON and LINDSEY and the other women who filed grievances were

never given any response other than the cursory statement that the search complied with IDOC

procedures.

> Answer: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.

## Class Allegations

51.    Logan Correctional Center, located in Logan County, Illinois, is one of two

prisons within the Illinois Department of Corrections that houses female prisoners.

> Answer: Defendants admit that Logan Correctional Center is located in Logan County, Illinois, and is one of two prisons within the Illinois Department of Corrections that houses female prisoners.

52.    Named Plaintiffs JOHNSON, BROWN, LINDSEY and CONNER seek to pursue

claims both for themselves and for a class of others similarly situated (the "Class") pursuant to

Federal Rule of Civil Procedure 23(b)(3). Named Plaintiffs believe the class should be organized

into the following two subclasses.

> Answer: Defendants deny that this case should be certified as a class action.

53.    Class I consists of all individuals who were subjected to the October 31, 2013

public group strip search at Logan Correctional Center. Class I brings claims pursuant to the

Fourth Amendment, the Fourteenth Amendment, and the Eighth Amendment. Named Plaintiffs

BROWN, LINDSEY, CONNER and JOHNSON seek to represent this class.

> Answer: Defendants deny that there was a "public group strip search" and deny that Plaintiffs' constitutional rights were violated. Defendants deny that this case should be certified as a class action.

54.    The members of Class I include prisoners who are presently in custody as well as former Logan Correctional Center prisoners who were released at some time after October 31, 2013. Because the claims of the in-custody class members will be analyzed through the lens of the Prison Litigation Reform Act, it is appropriate to divide Class I into two separate subclasses:

Subclass A consists of: All individuals who were subjected to the October 31, 2013 public group strip search at Logan Correctional Center, and who have remained in the custody of the Illinois Department of Corrections since that time.

Subclass B consists of: All individuals who were subjected to the October 31, 2013 public group strip search at Logan Correctional Center, and who were subsequently released from the custody of the Illinois Department of Corrections.

Answer:  Defendants deny that there was a "public group strip search" and deny that this case should be certified as a class action.

55.    The individuals in Class I are so numerous that joinder of all members is impractical. The Named Plaintiffs estimate that more than 150 women are members of Class I.

Answer:  Defendants deny that this case should be certified as a class action.

56.    There are questions of law and fact common to the claims of the Class. Among these common questions are:

Whether the public strip search was an unreasonable search in violation of the Fourth, Eighth and Fourteenth Amendments;

Whether the use of the public strip search and/or the way in which it was conducted violates the prisoners' rights under the Fourth, Eighth and Fourteenth Amendments;

Whether the responsible IDOC employees instituted, condoned, and/or were deliberately indifferent to the risk of the violations of the Class members' rights; and

Whether the responsible IDOC employees at Logan Correctional Center failed in their supervisory responsibilities to avoid and/or put a stop to the violations of the Class members' rights.

Answer:  Defendants deny that they violated Plaintiffs' rights under the Fourth or Eighth Amendments as applied through the Fourteenth Amendment or the rights of any similarly situated inmates and deny that this case should be certified as a class action.

57.     The claims of the Named Plaintiffs are typical of the claims of Class I. The Named Plaintiffs were prisoners at Logan Correctional Center and were subjected to the October 31, 2013 public group strip search. Named Plaintiffs BROWN and JOHNSON remain within the custody of IDOC and will represent the interests of Subclass A. Named Plaintiffs LINDSEY and CONNER are no longer in IDOC custody, and will represent the interests of Subclass B. Collectively, they seek to prove that the public group strip search violated their rights under the Fourth, Fourteenth, and Eighth Amendments, and that each of the Defendants is liable as a result.

Answer:  Defendants deny that they violated Plaintiffs' rights under the Fourth or Eighth Amendments as applied through the Fourteenth Amendment or the rights of any similarly situated inmates and deny that this case should be certified as a class action.

58.     The Named Plaintiffs will fairly and adequately represent the interests of Class I. They have retained skilled counsel with experience in class action, constitutional, and strip search litigation.

Answer:  Defendants deny that this case should be certified as a class action.

59.     The questions of law and fact common to Class I predominate over any individual issues. In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

Answer:  Defendants deny that this case should be certified as a class action.

60.     Named Plaintiffs seek to pursue an injunctive relief claim both for themselves and for a class of others similarly situated. Class II consists of:

All women who are currently incarcerated at Logan Correctional Center, and all women who will be incarcerated at Logan Correctional Center in the future.

Answer:  Defendants deny that this case should be certified as a class action and deny that Plaintiffs are entitled to injunctive relief.

61.     Class II brings claims pursuant to the Fourth Amendment, the Fourteenth Amendment, and the Eighth Amendment in order to secure injunctive relief. Named Plaintiffs JOHNSON and BROWN seek to represent this class.

Answer:  Defendants deny that this case should be certified as a class action, deny that they violated Plaintiffs' rights under the Fourth or Eighth Amendments as applied through the Fourteenth Amendment, and deny that Plaintiffs are entitled to injunctive relief.

62.     The individuals in Class II are so numerous that joinder of all members is impractical. Named Plaintiffs JOHNSON and BROWN estimate that approximately 1,800 women are members of Class II.

Answer:  Defendants deny that this case should be certified as a class action.

63.     There are questions of law and fact common to the claims of the Class. Among these common questions are:

Whether the public strip search of the type used during the cadet training exercises at Lincoln Correctional Center and Logan Correctional Center was an unreasonable search in violation of the Fourth, Eighth and Fourteenth Amendments;

Whether the use of the public strip search and/or the way in which it was conducted violates the prisoners' rights under the Fourth, Eighth and Fourteenth Amendments;

Whether the use of the public strip search and/or the way in which it was conducted violates the prisoners' rights under the Prison Rape Elimination Act ("PREA");

Whether the responsible IDOC employees instituted, condoned, and/or were deliberately indifferent to the risk of the violations of the Class members' rights;

Whether the responsible IDOC employees failed in their supervisory responsibilities to have avoided and/or put a stop to the violations of the Class members' rights; and

Whether there is a cognizable danger that Plaintiffs will be subject to recurring violations of their constitutional rights in the manner described herein.

Answer:  Defendants deny that they violated Plaintiffs' rights under the Fourth or Eighth Amendments as applied through the Fourteenth Amendment or the rights of any similarly situated inmates and deny that this case should be certified as a class action.

64.    The claims of Named Plaintiffs JOHNSON and BROWN are typical of the claims of Class II.

Answer:  Defendants deny that they violated Plaintiffs' rights under the Fourth or Eighth Amendments as applied through the Fourteenth Amendment or the rights of any similarly situated inmates and deny that this case should be certified as a class action.

65.    Named Plaintiffs JOHNSON and BROWN will fairly and adequately represent the interests of Class II. They have retained skilled counsel with experience in class action, constitutional, and strip search litigation.

Answer:  Defendants deny that this case should be certified as a class action.

66.    The questions of law and fact common to Class II predominate over any individual issues. In addition, a class action would be the most fair and efficient method of adjudicating the Class members' claims.

Answer:  Defendants deny that this case should be certified as a class action.

### Count I — Claims Pursuant to 42 U.S.C. § 1983
### Violations of the Fourth & Fourteenth Amendments

The Court dismissed Count I on July 18, 2016 [d/e 56]; therefore, Defendants do not answer this Count.

### Count II — Claims Pursuant to 42 U.S.C. § 1983
### Violations of the Eighth and Fourteenth Amendment

75.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

Answer:  Defendants re-state and incorporate their answers to each paragraph of the complaint.

76.     There was no valid penological justification for the October 13, 2013 public group strip search.

Answer:  Defendants deny that there was a "public group strip search" on October 31, 2013, and deny that there was no valid penological justification for the searches that occurred on that date.

77.     By instituting and continuing the group strip search described in fuller detail above, Defendants subjected Named Plaintiffs and the members of the Class to punishment in violation of the Eighth Amendment.

Answer:  Defendants deny the allegations contained in paragraph 77.

78.     As described more fully above, the Defendants conducted the public group strip search in a harassing manner intended to humiliate the prisoners.

Answer:  Defendants deny the allegations contained in paragraph 78.

79.     As a direct result of the express decisions of LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD, and one or more as-yet Unknown IDOC employees in charge of organizing, approving, training the involved officers and/or arranging for this public group strip search, the Named Plaintiffs and members of the Class were subjected to unreasonable body searches that were demeaning, dehumanizing, and

humiliating. Furthermore, these Defendants as well as Defendant CHADDON had supervisory responsibility to terminate the public group strip search and failed to do so.

Answer:  Defendants deny the allegations contained in paragraph 79.

80.    On information and belief, the Defendants executed this unconstitutional public strip search at Logan Correctional Center pursuant to a policy or practice implemented and overseen by Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD and other unknown IDOC Employees regarding strip searches conducted as training exercises for IDOC cadets. Accordingly, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of the Defendants who undertook this search. In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs and others similarly situated by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

Answer:  Defendants deny the allegations contained in paragraph 80.

81.    On information and belief, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD had notice of widespread policies and practices of how the IDOC employees under their supervision and control conducted these searches, pursuant to which prisoners like Plaintiffs and those similarly situated were subjected to unconstitutional strip searches, as described more fully above. Despite knowledge of these problematic policies and practices, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD did nothing to ensure that the prisoners at Logan Correctional Center were treated in accordance with

the rights afforded them by the United States Constitution. These widespread policies and practices were allowed to flourish because Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of the IDOC employees under their supervision. In this way, Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD violated the rights of Plaintiffs and those similarly situated by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

Answer:  Defendants deny the allegations contained in paragraph 81.

82.     The above-described policies and practices were able to exist and thrive because Defendants LOCKE, Assistant Warden LINNE, PASLEY, SHARON, DENNING, YURKOVICH, ZAVALA, and HATFIELD were deliberately indifferent to the problem, thereby effectively ratifying it.

Answer:  Defendants deny the allegations contained in paragraph 82.

83.     The injuries of Plaintiffs and those similarly situated to them were caused by employees of the IDOC, including but not limited to the named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

Answer:  Defendants deny the allegations contained in paragraph 83.

84.     As a direct and proximate result of Defendants' conduct described in this Complaint, the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs and those similarly situated, were violated and they suffered injuries including embarrassment, pain, suffering, and distress.

Answer:  Defendants deny the allegations contained in paragraph 84.

WHEREFORE, Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD; and Unknown Illinois Department of Corrections Employees Defendants ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden SHARON; ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER;

LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MAJOR

CHADDON; and Unknown Illinois Department of Corrections Employees.

Answer:  Defendants deny that Plaintiffs are entitled to judgment or to any of the relief they seek.

**Count III**
**42 U.S.C. § 1983 — Conspiracy**

85.     Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

Answer:  Defendants re-state and incorporate their answers to the previous allegations.

86.     Defendants reached an agreement among themselves to deprive the prisoners

subjected to the unconstitutional strip search described in this Complaint of their constitutional

rights and to protect one another from liability for depriving the prisoners of their rights, all as

described in the various paragraphs of this Complaint.

Answer:  Defendants deny the allegations contained in paragraph 86.

87.     In furtherance of this conspiracy, each of the co-conspirators committed overt acts

and was an otherwise willful participant in joint activity.

Answer:  Defendants deny the allegations contained in paragraph 87.

88.     The misconduct described in this Count was undertaken intentionally, with

malice, and/or with reckless indifference to the rights of Plaintiffs and other prisoners similarly

situated to them.

Answer:  Defendants deny the allegations contained in paragraph 88.

89.     As a direct and proximate result of the illicit prior agreement referenced above,

the rights of the prisoners subjected to this unconstitutional search, including Plaintiffs and those

similarly situated, were violated and they suffered injuries including embarrassment, pain,

suffering, and distress.

Answer:  Defendants deny the allegations contained in paragraph 89.

90.     These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

Answer:  Defendants deny the allegations contained in paragraph 90.

WHEREFORE, Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE); ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD; and Unknown Illinois Department of Corrections Employees Defendants ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden SHARON; ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ,

28

in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in

his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her

official capacity; current and former Illinois Department of Corrections Employees WARDEN;

BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER;

LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MAJOR

CHADDON; and Unknown Illinois Department of Corrections Employees.

Answer:  Defendants deny that Plaintiffs are entitled to judgment or to any of the relief
they seek.

**Count IV**
**42 U.S.C. § 1983 — Failure to Intervene**

91.      Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

Answer:  Defendants re-state and incorporate their answers to each paragraph of the
complaint.

92.      As described more fully above, Defendants each had a reasonable opportunity to

prevent the violation of the constitutional rights of the prisoners housed at Logan Correctional

Center who were subjected to this unconstitutional search had they been so inclined. They failed

to do so.

Answer:  Defendants deny the allegations contained in paragraph 92.

93.      Defendants' actions were undertaken intentionally, with malice, and/or with

reckless indifference to the rights of the prisoners involved in this strip search.

Answer:  Defendants deny the allegations contained in paragraph 93.

94.      As a direct and proximate result of Defendants' misconduct, the rights of the

prisoners subjected to this unconstitutional search, including Plaintiffs and those similarly

situated, were violated and they suffered injuries including embarrassment, pain, suffering, and

distress.

Answer:  Defendants deny the allegations contained in paragraph 94.

95.    These injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

Answer:  Defendants deny the allegations contained in paragraph 95.

WHEREFORE, Named Plaintiffs JOHNSON, BROWN, CONNER and LINDSEY respectfully demand judgment on behalf of themselves and the Class, awarding costs, fees, attorneys' fees, actual damages, and any other appropriate relief against ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden CLARA SHARON; Assistant Warden LINNE (a.k.a. LUNNE or LINNIE) ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ, in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her official capacity; current and former Illinois Department of Corrections Employees WARDEN; BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER; LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MONTGOMERY; MAJOR CHADDON; LT. MASON; and SGT. BRAINARD; and Unknown Illinois Department of Corrections Employees Defendants ANGELA LOCKE, in her individual and official capacity as former Warden of Logan Correctional Center; Assistant Warden SHARON; ALAN PASLEY; DEBBIE DENNING; JOSEPH YURKOVICH, in his individual and official capacity; FELIPE ZAVALA; RENEE HATFIELD; former Director of the Illinois Department of Corrections SALVADOR GODINEZ,

in his official capacity; Director of the Illinois Department of Corrections JOHN BALDWIN, in

his official capacity; Warden of Logan Correctional Center CHRISTINE BRANNON, in her

official capacity; current and former Illinois Department of Corrections Employees WARDEN;

BECK; JOHNSON; NESWICK; FRANKLIN; LESSMAN (a.k.a. LEESMAN); SLATER;

LINNE (a.k.a. LUNNE or LINNIE); COLE; SEXTON; MERRINGUE; ELKEN; MAJOR

CHADDON; and Unknown Illinois Department of Corrections Employees.

Answer: Defendants deny that Plaintiffs are entitled to judgment in their favor or to any relief they seek.

**Count V**
**42 U.S.C. § 1983 — Prison Rape Elimination Act**

The Court dismissed Count V on July 18, 2016 [d/e 56]; therefore, Defendants do not answer this Count.

**Count VI — Injunctive Relief**

104.    Plaintiffs re-allege each paragraph of this Complaint as if fully stated herein.

Answer: Defendants re-state and incorporate their answers to the previous allegations.

105.    The Illinois Department of Corrections permits and often conducts public group

strip searches during "cadet training exercises" in the manner described herein. There were

multiple earlier searches that were nearly identical which took place at Lincoln Correctional

Center. There is thus a cognizable danger that Plaintiffs will be subjected to recurrent violations

of their constitutional rights in the manner described herein. An injunction prohibiting such strip

searches is an appropriate judicial remedy to prevent the recurrence of these improper

procedures.

Answer: Defendants deny the allegations contained in paragraph 105.

WHEREFORE, Named Plaintiffs JOHNSON, CONNER and BROWN, on behalf of

themselves and Class II, respectfully demand that the Court enjoin Defendants LOCKE,

Assistant Warden LINNE, PASLEY, SHARON, YURKOVICH, ZAVALA, BRANNON and

BALDWIN, in their official capacities, from continuing the acts and practices set forth in the

above paragraphs, and for any other and further equitable relief as it may deem just and proper.

Answer:  Defendants deny that Plaintiffs are entitled to judgment in their favor or to any relief they seek.

## Further Request for Relief

WHEREFORE, Plaintiffs respectfully request that this Court certify this case as a class

action pursuant to Federal Rule of Civil Procedure 23(b)(2) for injunctive relief and (b)(3) for

damages, and appoint the undersigned as class counsel pursuant to Rule 23(g).

Answer:  Defendants deny that Plaintiffs are entitled to any of the relief they seek.

## Affirmative Defenses

### A. Qualified Immunity

At all times relevant to Plaintiffs' claims, the Defendants acted in good faith in the

performance of their official duties without violating clearly established constitutional rights.

Defendants are protected from liability by the doctrine of qualified immunity.

### B. Eleventh Amendment Sovereign Immunity

To the extent Plaintiffs seek money damages against Defendants in their official capacities,

such requests are precluded by the Eleventh Amendment, which bars a damages action in federal

court against a State or a State official sued in his or her official capacity.

Plaintiffs' requests for injunctive relief are also barred by the Eleventh Amendment, which

precludes the award of injunctive relief against a state actor absent a showing of an ongoing

constitutional violation.

## C.      Exhaustion

Plaintiffs Brown and Johnson filed this lawsuit concerning prison conditions while in the custody of the Illinois Department of Corrections and failed to properly exhaust administrative remedies prior to filing his suit.  Plaintiffs are therefore barred from continuing with this suit by 42 U.S.C. 1997e(a).

### Jury Demand

Defendants demand a trial by jury on all triable issues.


WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and deny all relief sought by Plaintiffs.


Respectfully submitted,

AARON LEESMAN, JOSHUA MERREIGHN, and MONICA SLATER,

Defendants,

LISA MADIGAN, Attorney General, State of Illinois

Laura K. Bautista, #6289023                          Attorney for Defendants,
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701            By:  s/Laura K. Bautista
Phone: (217) 782-5819                          LAURA K. BAUTISTA
Fax: (217) 524-5091                               Assistant Attorney General
lbautista@atg.state.il.us
.

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SANDRA BROWN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 15-1447-MMM |
| | ) | |
| ANGELA LOCKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

Laura K. Bautista, Assistant Attorney General, herein certifies that a copy of the foregoing document, Answer for Defendants Leesman, Merreighn, and Slater, was electronically filed on August 8, 2016, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Arthur Loevy | loevylaw@loevy.com |
| Jonathan Loevy | jon@loevy.com |
| Michael Kanovitz | mike@loevy.com |
| Ruth Brown | ruth@loevy.com |
| Tara Thompson | tara@loevy.com |

s/ Laura K. Bautista
LAURA K. BAUTISTA
Assistant Attorney General

Laura Bautista, #6289023
Office of the Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 782-5819  Phone
(217) 524-5091  Fax
lbautista@atg.state.il.us